Case 3:20-mc-99999   Document 1   Filed 01/02/20   Page 1 of 15 PageID #: 1

# UNITED STATES DISTRICT COURT
for the
**Western District of Kentucky**
**Louisville Division**

|  |  |  |
|---|---|---|
| Jessica R. Chenault | ) | |
|     *Plaintiff* | ) | |
|  | ) | |
| v. | ) | Case No. |
|  | ) | |
| Credit First, LLC | ) | |
| *dba* Central Kentucky Collections | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Paul Gross | ) | |
|     2282 Coles Campground Rd | ) | |
|     Murray, KY 42071 | ) | |
|  | ) | |
| Equifax Information Services, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |
|  | ) | |
| Great Lakes Ed. Loan Services, Inc. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     CT Corporation System | ) | |
|     301 S. Bedford St., Suite 1 | ) | |
|     Madison, WI 53703 | ) | |
|  | ) | |
| Trans Union, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     The Prentice Hall Corp. System | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |

# VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL and DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This is a complaint for damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and/or the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 28 U.S.C. § 1331, the FCRA, 15 U.S.C. § 1681p, and the FDPCA, 15 U.S.C. § 1692k. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Hardin County, Ky., which is located within this District.

## PARTIES

3. Plaintiff Jessica R. Chenault is a natural person who resides in Hardin County, Ky. Ms. Chenault is a "consumer" within the meaning of the FDCPA and the FCRA.

4. Defendant Credit First, LLC *dba* Central Kentucky Collections ("CKC") is Kentucky limited liability company, with its principal place of business located at P.O. Box 424 Elizabethtown, KY 42702. CKC has registered with the Kentucky Secretary of State and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

5. CKC regularly collects or attempt to collects debts owed or due or asserted to be owed or due another. CKC's principal purpose is the collection of debt. CKC is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6), and a "furnisher" of information within the meaning of the FCRA.

6. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309 that is registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

7. Defendant Great Lakes Educational Loan Services, Inc. ("Great Lakes") is a servicer and collector of student loans, with its principal office located at 2401 International Lane, Madison, WI 53704. Great Lakes is a "person" and furnisher of credit information under the FCRA.

8. Defendant Trans Union, LLC is a foreign limited liability company, with its

principal place of business located at 555 West Adams, Chicago, IL 60661 that has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

## STATEMENT OF FACTS

8. Ms. Chenault wants to buy her own home.

9. In order to accomplish this goal, Ms. Chenault is keenly aware of the importance of her credit score.

10. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of

your life—is on the right track.[1]

11. On October 3, 2019, Ms. Chenault applied for a home loan or a loan pre-approval from Commonwealth Bank & Trust ("Commonwealth").

12. In connection with Ms. Chenault's application, Commonwealth requested, received, reviewed, and relied on a tri-merged credit report published by Factual Data.

13. Commonwealth denied Ms. Chenault's loan application based on credit information contained in her Factual Data credit report.

14. After she was denied the home loan, Ms. Chenault reviewed her Factual Data tri-merged credit report and discovered several false and inaccurate credit information, including information furnished by CKC and Great Lakes.

## I. Facts Relating to CKC

15. CKC was reporting negative credit information concerning Ms. Chenault and a medical debt (the "CKC Tradeline").

16. The medical debt underlining the CKC Tradeline was incurred for personal, family, and household purposes.

17. The CKC Tradeline noted the tradeline had been opened in April 2019 in the amount of $225.

18. Ms. Chenault has been on Medicaid for almost a decade.

19. Whenever Ms. Chenault gets medical care or sees a provider for a checkup, she presents her Humana Medicaid card. Consequently, the CKC Tradeline was being reported in error.

20. On October 7, 2019, Ms. Chenault sent dispute letters to the three main consumer reporting agencies ("CRAs"): Equifax, Experian, and Trans Union. Ms. Chenault included proof of her Medicaid coverage during the time of the alleged service with her dispute letters.

21. Upon receipt of Ms. Chenault's dispute, the CRAs had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send CKC prompt notice of Ms. Chenault's dispute within five (5) business days of receiving each dispute.

---

[1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

22. The CRAs notified CKC of Ms. Chenault's dispute, which thereby triggered CKC's duty to re-investigate the debt under 15 U.S.C. § 1681s-2(b).

23. CKC failed to conduct a reasonable investigation of Ms. Chenault's dispute.

24. After investigating Ms. Chenault's dispute, CKC verified the CKC Tradeline as being reported as accurate, continued to report medical debt as an outstanding collection account with a balance due of $225, and did not note that the medical debt had been or was being paid by insurance, *i.e.* Medicaid.

25. As a result of CKC's failure to conduct a reasonable investigation of Ms. Chenault's dispute, CKC continued to furnish false negative credit information to Equifax, Experian, and Trans Union concerning Ms. Chenault and the CKC Tradeline. In particular, CKC, post-dispute, continues to falsely and inaccurately report that a positive balance of $225 remains due and owing on the CKC Tradeline.

26. CKC's failure to correct and update Ms. Chenault's consumer credit report has adversely affected Ms. Chenault by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Chenault's creditworthiness and credit score and has caused her to be denied credit and has caused her great deal of anxiety, frustration, and mental upset.

## II.     Facts as to Great Lakes, Equifax, and Trans Union

27. Through review of her credit reports, Ms. Chenault discovered Great Lakes was reporting negative credit information concerning a student loan that had been closed and transferred.

28. Great Lakes did not originate the student loan at issue. Rather, Great Lakes was servicing the student loan on behalf of the U.S. Department of Education. This makes Great Lakes a Third Party Collection Agency within the meaning of the Consumer Reporting Resource Guide ("CRRG").

29. On her Trans Union credit report, Great Lakes was reporting a $0.00 balance due, a payment history reflecting that the student loans were 120-days past due during a certain period of time before closing and transferring the student loans, and a "Pay Status" of "Account 120-days Past Due Date."

30. On her Equifax credit report, Great Lakes was reporting a $0.00 balance due and an "Status" of "Over 120-days Past Due."

31. According to the CRRG, the account status for a transferred student loan should either be coded as "Account Transferred to Another Company/Servicer" or as "Student Loan—Assigned to Government."

32. "Pay Status" on a Trans Union credit report and "Status" on an Equifax credit report both represent the coding for "account status" per the CRRG. Further, under the CRRG, the "account status" of transferred accounts is a permanent status that is not to be updated. This means that, no matter what happens to the student loan after transfer, the Great Lakes tradeline for the student loan at issue will forever be reported with an account status of 120-days past due on Ms. Chenault's credit reports, even if she pays the loan off in full.

33. Also according the CRRG, a third party collection agency is required to delete collection account that have been returned to the original creditor.

34. Great Lakes' reporting of the student-loan tradeline as 120-days late is inaccurate and misleading. Further, the misreporting of the student-loan tradeline at issue with a current status of 120-days late negatively affects Ms. Chenault's credit score and her credit rating.

35. The misreporting of the account status as being currently 120-days past due on Ms. Chenault's credit report makes any delinquency appear more recent than it actually is, which in turn creates a greater negative impact on Ms. Chenault's credit score than if the account status was being reported correctly.

36. Under 20 U.S.C. § 1078-6(c), Great Lakes—upon assignment, sale, or transfer of Ms. Chenault's student loan—should have requested that the CRAs to "remove the record of the default from [Ms. Chenault's] credit history."

37. The credit information furnished by Great Lakes is false and inaccurate. The "pay status" on her Trans Union credit report should have be reported as "Account Transferred" or as "Student Loan—Assigned to Government." The "account status" on her Equifax credit report should have be reported as "Account Transferred" or as "Student Loan—Assigned to Government."

38. Further, in compliance with federal law, Great Lakes should have deleted the negative payment history and any record of default from the tradeline for the student loan in question.

39. Ms. Chenault sent written disputes to Equifax, Experian, and Trans Union disputing numerous false and inaccurate credit information on her consumer credit reports, including

erroneous personal information and tradelines. Her dispute letters, each dated May 5, 2019, specifically referenced and disputed the student-loan tradeline furnished by Great Lakes.

40. Upon receipt of Ms. Chenault's dispute, Equifax, Experian, and Trans Union each had an affirmative duty under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable investigation of Ms. Chenault's dispute to determine the accuracy and correctness of the credit information disputed by Ms. Chenault.

41. Equifax and Trans Union failed to conduct a reasonable investigation of Ms. Chenault's disputes. In particular, both Equifax and Trans Union failed to delete the negative credit information concerning any default of the student loan at issue per the federal statute referenced above. Further, Equifax continued to report the "Account Status" of the student loan as 120-days late. Trans Union continued to report the "Pay Status" of the student loan as 120-days late. As explained above, per the CRRG, the account status for transferred student loans should either be reported as "Account Transferred" or as "Student Loan—Assigned to Government."

42. Equifax's and Trans Union's failure to conduct a reasonable investigation of Ms. Chenault's disputes and each's failure to correct and update Ms. Chenault's consumer credit reports in connection with the student loan at issue furnished by Great Lakes has adversely affected Ms. Chenault by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Chenault's creditworthiness and credit score and has caused her to be denied credit and has caused her great deal of anxiety, frustration, and mental upset.

43. Equifax violated the FCRA by failing to conduct a reasonable investigation of Ms. Chenault's disputes. After conducting its investigation of Ms. Chenault's dispute, Equifax continued to inaccurately and incorrectly report the "Account Status" of the Great Lakes student loans as 120-days past due.

44. Trans Union violated the FCRA by failing to conduct a reasonable investigation of Ms. Chenault's disputes. After conducting its investigation of Ms. Chenault's dispute, Trans Union continued to inaccurately and incorrectly report the "Pay Status" of the Great Lakes student loan as 120-days past due.

45. Upon receipt of Ms. Chenault's dispute, Equifax and Trans Union each had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send Great Lakes prompt notice of Ms. Chenault's dispute within five (5) business days of receiving each dispute.

46. Equifax and Trans Union each promptly notified Great Lakes of Ms. Chenault's dispute, which thereby triggered Great Lakes' duty to re-investigate the student loan at issue under 15 U.S.C. § 1681s-2(b).

47. Great Lakes failed to conduct a reasonable investigation into Ms. Chenault's dispute concerning the negative credit information Great Lakes is furnishing about Ms. Chenault and the student loan at issue.

48. Contrary to the statutory mandate of 20 U.S.C. § 1078-6(c), Great Lakes continued to report credit information that reflected the default status of the student loan at issue.

49. Next, for the student loan at issue, Great Lakes continued to falsely and inaccurately report the "Status" on Ms. Chenault's Equifax credit report and the "Pay Status" on Ms. Chenault's Trans Union credit report as 120-days late.

50. Great Lakes' failure to conduct a reasonable investigation of Ms. Chenault's disputes and failure to correct and update Ms. Chenault's consumer credit report has adversely affected Ms. Chenault by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Chenault's creditworthiness and credit score and has caused her to be denied credit and has caused her great deal of anxiety, frustration, and mental upset.

51. Great Lakes violated the FCRA by failing to conduct a reasonable investigation of Ms. Chenault's disputes by **(i)** failing to remove all evidence of default from the credit history of the student loan at issue as required by federal law; **(ii)** failing to delete the student loan at issue after transferring the loan; and **(iii)** continue to report the status of the student loan at issue 120 days past due

### III. Facts Relating to Equifax and the Erroneous Fraud Alert

52. On or about May 5, 2019, Ms. Chenault sent a dispute letter to Equifax concerning several false and inaccurate credit information on her Equifax credit report including but not limited to Great Lakes and CKC.

53. Ms. Chenault's May 5th dispute letter did not request a fraud alert be placed on her account or claim that she was the victim of identity theft.

54. On June 1, 2019, Equifax sent Ms. Chenault a letter notifying her that it had placed an initial fraud alert on her account and had notified Experian and Trans Union of her alleged "request" for a fraud alert.

55. By placing an unwanted fraud alert on her account, Equifax caused Ms. Chenault to lose time and out-of-pocket expenses to correct the error.

## **CLAIMS FOR RELIEF**

I.   **Claims against Credit First, LLC dba Central Kentucky Collections**

   A.   **Violations of the FCRA**

   56.   The foregoing acts and omissions of Defendant Credit First, LLC *dba* Central Kentucky Collections constitute violations of the FCRA.

   57.   After being informed by one or more consumer reporting agencies that Ms. Chenault disputed the accuracy of the information it was providing concerning Ms. Chenault, CKC willfully failed to conduct a proper investigation of Ms. Chenault's disputes, filed with one or more consumer reporting agency, that CKC was furnishing false and inaccurate credit information about Ms. Chenault and the CKC Tradeline. In particular, CKC continued to report a positive amount due on the medical debt underlying the CKC Tradeline and failed to note that the medical debt had been paid or was being paid by insurance.

   58.   CKC willfully failed to review all relevant information purportedly provided by one or more consumer reporting agency to CKC in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

   59.   CKC willfully failed to direct the consumer reporting agencies to delete inaccurate information about Ms. Chenault pertaining to the CKC Tradeline as required by 15 U.S.C. § 1681s-2(b)(C).

   60.   Ms. Chenault has a private right of action to assert claims against CKC arising under 15 U.S.C. § 1681s-2(b).

   61.   CKC is liable to Ms. Chenault for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n.

   62.   In the alternative, CKC's conduct, actions and inactions were negligent rendering CKC liable to Ms. Chenault under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

   B.   **Violation of the FDCPA**

   63.   The foregoing acts and omissions of Defendant Credit First, LLC *dba* Central

Kentucky Collections constitute violations of the FDCPA.

64.     CKC violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and one or more subsections of each statute by **(i)** attempting to collect a debt from Ms. Chenault that she does not owe; **(ii)** reporting false credit information about Ms. Chenault in the CKC Tradeline; and **(iii)** misrepresenting the amount, character, and status of the medical debt underlying the CKC Tradeline to the CRAs.

## II.     Claims against Great Lakes Educational Loan Services, Inc.

65.     The foregoing acts and omissions by Great Lakes Educational Loan Services, Inc. constitute violations of the FCRA.

66.     Great Lakes violated 15 U.S.C. § 1681s-2(b). After being informed by Equifax and Trans Union that Ms. Chenault disputed the accuracy of the information Great Lakes was providing concerning Ms. Chenault and the student loan at issue furnished by Great Lakes, Great Lakes willfully failed to conduct a proper investigation of Ms. Chenault's disputes filed with Equifax and Trans Union that Great Lakes was furnishing false negative credit information about Ms. Chenault and the student loan at issue.

67.     Great Lakes willfully failed to review all relevant information purportedly provided by Equifax and Trans Union to Great Lakes in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

68.     Great Lakes willfully failed to direct Equifax and Trans Union to correct or delete inaccurate information about Ms. Chenault pertaining to the student loan at issue as required by 15 U.S.C. §1681s-2(b)(C), *i.e.* Great Lakes failed to **(i)** remove the record of default for each transferred loan from Ms. Chenault's credit history as required by federal law; **(ii)** failed to delete the student loan after transfer; and **(iii)** continued to report the status of the student loan at issue as 120 days past due.

69.     As a result of Great Lakes' failure to conduct a reasonable investigation of Ms. Chenault's dispute, Ms. Chenault suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress.

70.     Under the FCRA, Great Lakes has a duty, in its responses to Equifax and Trans Union in connection with its investigation of Ms. Chenault's disputes, to correct the tradeline for the student loan at issue.

71.     Ms. Chenault has a private right of action to assert claims against Great Lakes arising under 15 U.S.C. §1681s-2(b).

72.     Great Lakes is liable to Ms. Chenault for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages

in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

73. In the alternative, Great Lakes' conduct, actions and inactions were negligent rendering Great Lakes liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### III. Claims against Equifax Information Services, LLC

74. The foregoing acts and omissions of Equifax Information Services, LLC constitute violations of the FCRA as set forth below:

#### A. Violation of 15 U.S.C. § 1681i(a)(1)

75. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation of Ms. Chenault's dispute concerning the Great Lakes tradeline.

76. As a result of Equifax's failure to conduct a reasonable investigation of Ms. Chenault's dispute, Equifax continued to inaccurately report that the Account Status on the Great Lakes student-loan at issue was 120-days past the due date and failed to delete the default status of the Great Lakes student-loan at issue as required by federal law. Ms. Chenault suffered actual damages in the form of a lowered credit score and denial of credit. Ms. Chenault also suffered frustration, irritation, and emotional upset and distress.

77. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

78. In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

#### B. Violation of 15 U.S.C. § 1681e(b)

79. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the Great Lakes student-loan tradeline at issue and the accuracy of credit reports it published to its users and subscribers. In particular, Equifax falsely and inaccurately reported that the Account Status on the student loan assigned to Great Lakes for purposes of collection as 120-days past due after Great Lakes notified Equifax that the student loans had been closed and transferred. After being notified of the transfer, Equifax should have **(i)** reported the Great Lakes tradeline as "Account Transferred" or as "Student Loan—Assigned to Government;" and **(ii)** removed all record of default from the Great Lakes student-loan tradeline at issue.

80. As a result of Equifax's failure to establish and/or follow reasonable procedures to

assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the Great Lakes tradeline and the accuracy of credit reports it published to its users and subscribers, Ms. Chenault suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress.

81. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

82. In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### C. Defamation/Slander of Credit

83. The foregoing acts and omissions by Equifax Information Services, Inc. constitute defamation/slander of credit.

84. Ms. Chenault did not request Equifax to place a fraud alert on her credit reports.

85. Equifax intentionally published to Experian and Trans Union the false statement that Ms. Chenault had requested that Equifax place a fraud alert on her credit reports.

86. Equifax intentionally published to its users and subscribers that requested Ms. Chenault's Equifax credit report the false statement that Ms. Chenault had requested that Equifax place a fraud alert on her credit reports.

87. Equifax's publication of false statements about Ms. Chenault and unauthorized fraud alert is defamation *per se*, which entitles Ms. Chenault to actual, special, and punitive damages.

88. In the alternative, Equifax's publication of false statements about Ms. Chenault and unauthorized fraud alert is false and defamatory, which entitles Ms. Chenault to actual and punitive damages.

## IV. Claims against Trans Union, LLC

89. The foregoing acts and omissions of Trans Union, LLC constitute violations of the FCRA as set forth below:

### A. Violation of 15 U.S.C. § 1681i(a)(1)

90. Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation of Ms. Chenault's dispute concerning the Great Lakes student-loan tradeline at issue.

91. As a result of Trans Union's failure to conduct a reasonable investigation of Ms. Chenault's dispute, Trans Union continued to inaccurately report that the Pay Status on the Great Lakes student-loan tradeline at issue was 120-days past the due date and failed to delete the default status of the Great Lakes student-loan at issue as required by federal law. Ms. Chenault suffered actual damages in the form of a lowered credit score and denial of credit. Ms. Chenault also suffered frustration, irritation, and emotional upset and distress.

92. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

93. In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### B. Violation of 15 U.S.C. § 1681e(b)

94. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the Great Lakes student-loan tradeline at issue and the accuracy of credit reports it published to its users and subscribers. In particular, Trans Union falsely and inaccurately report that the Pay Status on the student loan assigned to Great Lakes for purposes of collection as 120-days past due after Great Lakes notified Trans Union that the student loan had been closed and transferred. After being notified of the transfer, Trans Union should have **(i)** reported the Great Lakes student-loan tradeline at issue as "Account Transferred" or as "Student Loan—Assigned to Government;" and **(ii)** removed all record of default from the Great Lakes student-loan tradeline at issue.

95. As a result of Trans Union's failure to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the Great Lakes student-loan tradeline at issue and the accuracy of credit reports it published to its users and subscribers, Ms. Chenault suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress.

96. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

97. In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jessica R. Chenault requests that the Court grant her the following relief:

1. Award Plaintiff statutory damages;

2. Award Plaintiff actual damages;

3. Award Plaintiff punitive damages under 15 U.S.C. § 1681n;

4. Award Plaintiff Attorney's fees, litigation expenses and costs;

5. A trial by jury; and

6. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James H. Lawson
**J. Hays Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyconsumerlaw.com

## **VERIFICATION**

Plaintiff Jessica R. Chenault declares as follows:

1. I am the Plaintiff if the present case.

2. I reside in Hardin County, KY.

3. I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called upon to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4. I verify and affirm under the penalty of perjury under the laws of the United States of America and the Commonwealth of Kentucky that the factual averments in this Verified Complaint concerning myself and my activities are true and correct. 28 U.S.C. § 1746.

Executed on \_\_\_\_12 - 31 -\_\_\_\_, 2019

*[signature: Jessica Chenault]*

Jessica R. Chenault
*Plaintiff*